UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROBERT S. SCHMIDT,<br><br>                     Plaintiff,<br>v.<br><br>SHERIFF DAVID A. CLARKE, JR.,<br>BARBARA WIGLEY RN, CONNIE PUETZ RN,<br>LETINA PEVEY LPN, DEBRA FENCEROY RN,<br>NORMA HUGHES LPN,<br>KIM TURNER-POINTER LPN,<br>SONJA NEAL LPN, JESSICA ZEMLAK,<br>MELISSA VAN HOFF, DIONNE YOUNG,<br>ELLIE SEYMOUR, DR. MICHAEL GREBNER,<br>KRIS BABE RN, MARGARET ZARWELL RN,<br>SUE PRUSINSKI LPN, GLORIA BEAL RN,<br>MELISSA CASTILLO LPN, FLOYD ELFTMAN,<br>PAUL DOUGLAS RN, DR. JUSTIN WOODS,<br>DR. ROBERT BLANCO, and<br>DR. ROGER BENSON,<br><br>                     Defendants. | Case No. 10-CV-381-JPS<br><br><br><br><br><br>ORDER |

    *Pro se* plaintiff Robert S. Schmidt ("Schmidt"), a prisoner in the custody of the State of Wisconsin, filed a claim under 42 U.S.C. § 1983, asserting that the defendants deprived him of his prescribed blood thinner and blood tests, resulting in a painful blood clot in his left leg. Second Amended Complaint ("2d Am. Compl.") (Docket #74) at 5-6. Presently before the court is a motion for summary judgment, filed by the defendants. (Docket #98). For the reasons stated below, the defendants' motion will be denied.

1.  Facts[1]

Schmidt was in the custody of the Milwaukee County Jail from October 23 through October 25, 2009. From October 25, 2009, through December 21, 2009, Schmidt was in the custody of the Milwaukee County Correctional Facility-South. When Schmidt arrived at the jail on October 23, 2009, the medical record noted that Schmidt took Warfarin[2] daily for chronic Deep Vein Thrombosis ("DVT"). A Request of Information ("ROI") was sent to Fox Lake Correctional Facility, Schmidt's previous location of confinement, to verify Schmidt's prescription. The parties dispute whether the ROI was sent on October 23 or October 25, 2009. Either way, the parties agree that Schmidt went without his prescribed blood thinners for five consecutive days: the 23rd, 24th, 25th, 26th, and 27th of October, 2009. On October 28, 2009, an Advanced Nurse Practitioner ("ANP") ordered three doses of Warfarin: two 10-milligram doses and one 2-milligram dose. On November 5, 2009, Schmidt's blood was tested and a 6-milligram dose of Warfarin was ordered. On November 11, 2009, a 2-milligram dose was ordered.

Schmidt claims that on or about December 10, 2009, he started to experience pain and walk with a noticeable limp. He further claims that his leg was hot to the touch and had to remain elevated at all times. Defendants admit that Schmidt filed out a medical request slip, but state that it is unclear

---

[1] Facts appearing in this section are not disputed, unless noted. Facts are taken from the Defendants' Proposed Findings of Fact (Docket #113) as compared with the Plaintiff's Response to Defendants' Proposed Findings of Fact (Docket #102), and the 2d Am. Compl as compared with Defendants' Answer. (Docket #77).

[2] Warfarin is the generic name for Coumadin, a prescription blood thinner. In their briefing, the parties utilize both names; this Order will use Warfarin throughout.

when the request slip was submitted. Both parties agree that on December 16, 2009, Schmidt saw a nurse at the jail, and was then transported to the hospital. Schmidt claims that an ultrasound performed at the hospital revealed a two and a half foot long clot in his left leg.

2.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court ruling on a summary judgment motion construes all facts and makes all reasonable inferences in the light most favorable to the nonmoving party. *Id.*

3.  Analysis

Schmidt alleges a violation of the Eighth Amendment of the United States Constitution.[3] (Compl. at 7). As plaintiff in this action, Schmidt will

---

[3]Schmidt attached an affidavit as part of his briefing in opposition to defendants' motion. (Docket #104). In the affidavit, Schmidt states that he was arrested on October 22, 2009. In that case, Schmidt would have been a pretrial detainee at the time of the alleged constitutional violation, and, therefore, his claim arises under the Fourteenth Amendment's Due Process Clause, rather than the Eighth Amendment. *Velez v. Johnson*, 395 F.3d 732, 735 (7th Cir. 2005). The court notes this distinction though it does not affect analysis of this case; in the Seventh Circuit, "there is 'little practical difference between the two standards.'" *Id.* (*quoting Weiss v. Cooley*, 230 F.3d 1027, 1032 (7th Cir. 2000)).

carry a burden to show that: (1) he had a serious medical need; (2) defendants were deliberately indifferent to his serious medical need; (3) defendants' action or inaction caused him harm; and (4) defendants acted under color of law. *Farmer v. Brennan*, 511 U.S. 825 (1994). Defendants can prevail on a motion for summary judgment by showing that there are no material facts in dispute, and that they are entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a). In their motion, defendants concede that Schmidt has a serious medical need and that defendants acted under color of law. (Brief in Support at 2-3). However, defendants argue that they are entitled to summary judgment because Schmidt cannot prove causation or deliberate indifference. (Brief in Support at 3-4).

    3.1    Causation

In the brief in support of their motion, the entirety of defendants' argument regarding causation is as follows:

> Assuming Schmidt had a clot after arriving at Milwaukee County, he cannot allege it occurred as result [sic] of inadequate medical care or deliberate indifference to his condition. After being prescribed Warfarin, he was examined by an advanced nurse practitioner. (Pope-Wright Affidavit ¶ 5, Exhibit A). It was then ordered that he have additional testing on November 24, 2009 to determine his clotting times.

(Brief in Support at 3-4). In their reply briefing, defendants point out that Schmidt's medical condition existed prior to his incarceration. They then conclude: "[i]t is impossible for the Plaintiff to attribute his blood clot (for which he was clearly susceptible) to any of the Defendants." (Reply Brief (Docket #110) at 2-3).

In his brief in opposition to the defendants' motion, Schmidt explains that "DVT is a blood clot in a vein that generally occurs where the blood stops or slows down, such as the calves of the legs. The major risk associated

with DVT is that the blood clot will break loose and travel through the blood stream to the lungs." He also states that DVT is managed via blood thinners, and that prior to his detention in Milwaukee County, he had been taking Warfarin daily.

Construing the record in a light most favorable to Schmidt and drawing all reasonable inferences in his favor, *Anderson*, 477 U.S. at 248, the court cannot agree with the defendants' argument that Schmidt cannot prove causation. In reaching this conclusion, the court is mindful that Schmidt is incarcerated and indigent, and is thus unable to investigate or to secure expert witnesses. Even so, Schmidt has laid out the argument that: (1) he requires Warfarin to prevent blood clots; (2) defendants did not provide him Warfarin for several days; and (3) he developed a blood clot. It is reasonable to infer a causal relationship from those facts. Expert testimony on the complicated issue of medical causation will be necessary, should this matter go to trial. Absent such evidence at this point, however, Schmidt's offering suffices, notwithstanding defendants' bare allegations that proving causation is "impossible."

### 3.2 Deliberate Indifference

Defendants next argue entitlement to summary judgment on the ground that there is no evidence that defendants acted with deliberate or reckless disregard for Schmidt's constitutional rights. To meet his burden to prove deliberate indifference, Schmidt must show that the defendants:[4] (1) actually knew of a substantial risk of serious harm to Schmidt's health; and (2) consciously disregarded this risk by failing to take reasonable measures

---

[4] Schmidt bears the burden of proving liability as against each individual defendant. Defendants motion, however, considers all defendants *en masse* instead of teasing apart the facts as they relate to each defendant.

to address it. *Farmer v. Brennan*, 511 U.S. at 837. "A medical professional's deliberate indifference may be inferred when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *King v. Kramer*, 680 F.3d 1013, 1018–19 (7th Cir. 2012) (internal quotation marks and citation omitted).

Defendants' entire argument in support of summary judgment on this point states:

> First, upon being informed by Schmidt that he had deep vein thrombosis, medical personnel sent out a request of information to verify this diagnosis. It goes without saying that a correctional facility should not dispense prescription medication to an inmate merely based on the inmate's statements. Furthermore, no ethical medical personnel in the civilian world would give prescription medication without verifying a prescription. In a correctional setting, it is even more imperative that such confirmation take place.
>
> Five days after Schmidt reported his condition and his medication, the Defendants gave him a prescription (Warfarin) for his deep vein thrombosis. This occurred after receiving verification.

Defendants' reply briefing reiterates the same points.

This argument does not speak to Schmidt's claims; Schmidt does not claim that the jail denied his constitutional rights by verifying his prescriptions prior to dispensing the medication. Rather, Schmidt argues that the untimely and insufficient treatment he received constituted inadequate medical care.

Construing the record in a light most favorable to Schmidt, and drawing all reasonable inferences in his favor, the court cannot grant

summary judgment based on the defendants' largely inapposite argument. The parties do not dispute that Schmidt has DVT, and that he notified defendants of his requirement for treatment. Again, with the benefit of expert witnesses, Schmidt may well prove that a five-day delay in verifying a prescription for an important daily medication is a "substantial departure from accepted professional judgment, practice, or standards" and that, therefore, the defendants did not take "reasonable measures to address" the risk to Schmidt's health.

For the above-articulated reasons, the defendants' motion for summary judgment must be denied.

Accordingly,

IT IS ORDERED that Defendants' Motion for Summary Judgment (Docket #98) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that a status conference will be held in Courtroom 425 of the United States Courthouse, 517 East Wisconsin Avenue, Milwaukee, Wisconsin, at 8:30 A.M. on July 16, 2013, to address the further scheduling of this case, including trial.

Dated at Milwaukee, Wisconsin, this 25th day of June, 2013.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge